We'll hear argument next in Case 16-341, T.C. Heartland v. Kraft Foods. Mr. Dabney. Mr. Chief Justice, and may it please the Court, the Court in this case is presented with an historic choice. That choice is between upholding or destroying venue protections that Congress provided in 28 U.S.C. 1400b, and that this Court, interpreting that statute, declared to exist in its four-coat glass decision. And the correct choice, we submit, is to adhere to this Court's existing, long-established interpretation of section 1400b, and to reject the new call for a new revisionist interpretation that would render section 1400b nugatory in this case and in all but the most unusual cases. I'd like to open first with some undeniable points. In four-coat glass, this Court made two holdings about 1400b that control this case. The first is this Court interpreted section 1400b as a stand-alone, the sole and exclusive provision governing venue in patent cases, and is not to be supplemented with section 1391. Sotomayor, how can that be when in Brunette we said that 1391 governed aliens, the definition of aliens? So that broad statement we couldn't have met. What the Court held in Brunette was that venue legislation had, since the beginning of the Republic, been extended only to United States domestic persons, and that the then-existing 1391d of Title 28 was not a venue rule at all, but rather was a codification of a principle that dated back to 1789, that aliens were simply outside the scope of all venue laws. Sotomayor, so what do we do with unincorporated associations? What we do with unincorporated? Those are not defined by 1400. Well, 1400b in four-coat was held to apply to all defendants. That was one ground on which this Court held in four-coat that 1400b was stand-alone precisely because its predecessor had applied to any person, corporation, or partnership, and there was never any practical issue interpreting 1400b as in litigation involving limited partnerships and even unincorporated non-person associations because the linchpin of 1400b and its predecessor was domicile. When you have a venue rule that keys to domicile and specifically distinguishes between a domiciliary and a non-domiciliary, then the problems that the Denver and Rio Grande case addressed and that Respondent brings up as hypothetical problems simply didn't exist. It's noteworthy that in the Respondent's brief, they don't cite a single real-world example where there was any problem interpreting and applying section 1400b ever since the Sperry v. American Railroad case. Ginsburg's is there any other provision, venue provision, in which a venue for a corporation is only the place of incorporation? Or venue for a corporation is only the place of incorporation. I cannot stand here, Your Honor, and identify. It could very well be that there is one, and that's a very good reason why when Congress amended 1391 and 2011, they put that broad exception language in. Well, don't you suppose, even for diversity purposes, a corporation is diverse based on not simply its place of incorporation, but its principal place of business. Principal place of business counts, doesn't count under 1400. Well, since 1948, that has been the general rule that 1391c has provided. 1391c has said for 60-odd years that a corporation, regardless of its domicile, will be deemed to be resident in this district, that district, that district. And that has been a feature of general venue law since 1948. The whole point here is that that rule was urged upon this Court in the Forco Glass case, the Court considered statutory language that was not materially different in this respect from current 1391, and held that 1400b, when it says the judicial district where the defendant resides, that means domicile. That means where the defendant resides. Ginsburg. But whatever it said in Forco, it was not based on any statute. It was based on the common law, where is the corporation domiciled. Well, I would respectfully disagree with that. The word resides in the statute was a statutory term, and it had a very well-established meaning at the time of the statute's enactment, and this Court held one of the specific issues in this case is, did the word resides in 1400b signal a change from the word whereof he is an inhabitant in the section 48 of the 1911 judicial code? And this Court held those words were synonymous. It meant domicile, and there can only be one of those. There's only one domicile. Kagan. What do you think Congress would have to do to reverse our decision in Forco? Well, there are many ways that it could be done, and in 2001, the American Law Institute proposed that section 1400b be repealed. Is there any way Congress could do it without repealing 1400? Is there any change that Congress could make to 1391 that would have that effect? I could imagine that if, instead of saying, except as otherwise provided by law, the statute said, notwithstanding any other provision of law, this would govern, that would be a way to do that. That would do it? In other words, your argument in the end rests on that except provision? It rests, importantly, on the except provision. The except provision makes this case an easier case than Forco Glass was, because at the time of Forco Glass, all you had was the general venue statute and the very specific, tailored, historic venue statute that had been dating back to 1897. And so in that case, the Court used the standard tools of statutory construction and said, you know, the specific statute is not going to be swallowed up and rendered nugatory by the more general, and it applied the kind of reasoning that the Radzenauer case did. Radzenauer v. Touche Ross is a very, very analogous case to this. But now that Congress has specifically provided, not that 1391 overrides 1400b, but that 1391 yields, is subordinate to other statutes and common law that provide otherwise for venue, that makes this case just easy to apply. But Congress also said in 1391c that it was defining residency for all venue places, all venue purposes. And the prior statute said for venue purposes. So, yes, the word all was added. Respondent has not identified any venue purpose that was not covered by the original version of 1391c that now is covered by 1391c. What we never had before 2011 was a statute that subordinated 1391c to other venue provisions, and we encourage the Court to read pages 31 and 32 of Respondent's brief, because you don't get up until, it isn't until you get to page 31 that Respondent can even bring itself to address the exception clause, which is so clearly fatal to their position. They talk about all means, all means, all means, all for the first 30 pages. And then finally we get to page 30 and 31, and what do they say? Well, they say, well, the except language, the except language has nothing to do, this is on page 32. The except language in section 1391a has nothing to do with the definition in 1391c, quote, those definitions do not govern venue, unquote. Well, that directly contradicts what they say on page 8 of their brief, which states, quote, the new section 1391c now governs for all venue purposes. So the plain meaning of govern applies to 1391c by their own characterization. They're the ones who are saying that 1391c governs venue in this case, which is what they say on page 8, and then they try to do this acrobatic maneuver to escape the exceptions clause by saying it doesn't govern. Well, as we say in our reply brief, the plain meaning of govern means that 1391c is part of the sections that in the structure of 1391 is subordinated to the exception language. So the Court doesn't need to do anything here except say that Forco's interpretation of 1400b, which under Kimball v. Marvell and statutory precedents of this course, it is much a part of that statute as the words originally were, that that is part of the law that everyone agrees provides for venue otherwise than what the Respondent is arguing for. The Respondent is arguing that 1400b should now be given an artificial meaning imported from 1391c. That is the exact argument that the Respondent made in the Forco case. The Petitioner in Forco was a West Virginia corporation who was alleged to reside in the Southern District of New York when it didn't actually reside because the argument was it's deemed fictitiously to reside in New York under 1391. And the Court said in the context of 1400b, which distinguishes between resident and nonresident defendants, you can't import that synthetic, fictitious definition of resides without destroying both the text of the statute and completely defeating its purpose. 1400b was enacted to restrict where patent cases could be filed, and what we've seen in the Federal exercise experiment since 1990 is a very good demonstration of why patent cases need a venue statute like 1400. If you don't have a venue statute like section 1400, you get the kind of litigation experiences that are set out in the amici briefs. The law professor's brief noted that there's a single judge in the United States that has one-quarter of all patent cases in the United States on his docket. This is a situation that cries out for nothing more than upholding the venue protection that Congress provided and that this Court announced in Forco and that Congress took a very careful look at in 2011 and decided to retain. Kagan. Kagan. I mean, one oddity of this case is usually when we say something, when we issue a decision, we can be pretty confident that Congress is acting against the backdrop of that decision. But I think that that would be an odd thing to say in this case, given that for 30 years the Federal Circuit has been ignoring our decision and the law has effectively been otherwise. And then the question is, well, what is the backdrop against which Congress is legislating? It seems actually that if I were a congressman, I think that the practical backdrop against which I'm legislating is not Forco. It is instead the Federal Circuit's decision in V.E. Holding, which is the decision that the practice has conformed to. Well, I can tell the Court from someone who does practice that not everyone ever acceded to V.E. Holding. And I think if you look at what actually happened in the 2011 Act, it seems to me that in 2011 Congress took steps that indicated that they didn't get the memo, that they didn't get that this Court's decision in Forco Glass was a nullity, and that its disregard by lower courts had somehow become the law of the land. First, V.E. Holding, the 1990 decision of the Federal Circuit, had seized upon a prepositional phrase in a 1988 version under this chapter. So if Congress was thinking, oh, what I want to do is lock in a situation in which an enormous, extreme, controversial imbalance in Federal patent litigation goes to a very small number of dictrics, it was an odd thing for Congress to have repealed the very grab hold that the Federal Circuit had seized on to justify its results. So I would argue that the legislation that Congress passed, far from ratifying that holding, very intentionally abrogated it, not only that, in September, 3 months before the 2011 Act was passed, Congress amended the America Invents Act to provide for a new restriction on what could be deemed a regular and established place of business under 1400B. Section 18C of the AIA says that an automated telemachine, an ATM, shall not be deemed a regular and established place of business. Now, I suppose the Respondent would say that that provision was not inserted at the behest of New York Money Center banks, that that provision was put in at the behest of individuals who didn't even form an LLC or a corporation so that they would enjoy the protection alone. Kennedy, What wasn't that statute before the 1400 was enacted? I mean, that case. Waxman, That amendment was done in September of 2011 by the same Congress, 3 months before Congress declined to accept the American law. Breyer, I don't quite see two things, one you can comment on or not, but these amalgam debriefs, they are filled with this thing about a Texas district, which I think has too many cases. What's that got to do with this? As far as I can see, if we are supposed to decide what's good or bad, maybe you would lose. But I don't know whether that's good, bad, or indifferent, okay? But is there some relevance to it? And the second thing that I would like to know is you are not a corporation. So since you are not a corporation, why do we have this case here deciding? What are we supposed to do about that? We don't normally decide cases because Mr. Smith would like us to decide a case involving a corporation. He's not a corporation, and nor are you. So what do we do? Well, let me respond in two ways. First of all, from the Petitioner's point of view, the relevance of litigation behaviors in the United States is important evidence of why section 1400b was a wise statute that Congress passed and that it should be upheld, not not not. Why, when you're complaining about a forum that's friendly to infringers? Many corporations are incorporated in Delaware. That's also said to be a friendly forum. There has never been, in any other field of law, such a disparity between patent infringement case filings and other case filings in other areas of law. And that is. Breyer. Breyer. You can go into that if you want. As far as that might be, other people are interested in that. But I really feel I need an answer to my second question. Can you remind me what that is? That is, you're asking us to decide where venue is proper for a corporation, and you are not a corporation. Therefore, on what basis are we supposed to decide that? That's not a correct statement of our position. 1400B is not restricted to corporate or individual or other defendant. But is there a holding that it includes you? There's a holding in Forco that it applies to all defendants, all, italicized all, just as Whittaker said, all in italics. Including a person. Including a person. Including a partnership, including an unincorporated partnership. The predecessor statute to 1400B specifically said partnership. So this was never a problem for patent cases. It was always that all defendants, all types of defendants were covered by the statute. So that has not been a question that's ever been raised throughout this case. And the beauty of this is Judge Learned Hand's opinion in the Sperry case in 132 Federal 2nd. It dealt with the hardest case of all. T.C. Heartland is a chartered entity. It has a charter, and you can tell where its principal place of business is by just looking it up in a public record. Learned Hand dealt with the hardest of all situations of what do we do with an unincorporated association that isn't an entity. It was the Association of American Railroads that had no entity status at all, and Judge Learned Hand in that case held, which had been a rule applied across the board in patent cases without problem, that for a nonperson, an association that was a nonperson, we look to the we treat the inhabitants as being where the principal place of business is located. But to reiterate, the statute has always applied to unincorporated entities. The patent statute has. And the Respondent has not pointed to a single real world Where does this unincorporated entity reside? In Indianapolis, Indiana. No other place? No other place. What do we look to to confirm that? The corporate charter of the company. It so happens What law do we look at to see where an LLC resides? Under this Court's precedence, the Court has looked to State law to determine where the residence of a juristic person created by a State is located. And so I suppose the State would say we count the principal place of business as well. Well, some States might do that, but the States always require that the domicile to be in the State. So in this case, in this case, it's a very straightforward case, because the public office, that is, its legal domicile under Indiana law is in Indianapolis. But it is an Indiana domicile question under anybody's interpretation. So unless there is some fictitious meaning given to 1400B, imported from another place, this is an easy case. The petitioner has no offices in Delaware. It has no regular established place of business in Delaware. And there's really not much more to say about that. There's one other point that I'd like to bring up, and that is that 1400B was enacted together with a federal service of process statute, found today in 28 U.S.C. 6094. And it authorizes services of process in patent cases that are commenced in a district where the defendant is not a resident, but has a regular and established place of business. And there is another demonstration that in this context, resident means domicile, and federal law specifically provides for nationwide service of process on non-resident defendants. So the key point I'd just like to leave you with is, for more than 100 years, a patent venue has been a function of the domicile of a defendant, and it provides for an easy to administer, clear rule that prescribes where venue is permissive in a patent case. But for more than 30 years, the practice has been the other way. I mean, I was thinking as I was reading the brief, sometimes we have accidental theme days at the Supreme Court. So today's accidental theme is, when 30 years of practice goes against you, what happens? I heard Justice Souter say something like that in the KSR case. You know, the teaching suggestion motivation test has been around so long that at some point the mistake becomes the law. And this court has again and again and again stood up for its authority to declare what the law is. On issues of patent law, there's actually a precedent, Andrews versus Hovey, that says no issue of patent law is settled until we have settled it. In Dickinson versus Zirko, there's a tremendous administrative law, body of law that this court said the Federal Circuit was wrong in the way it- The Federal Circuit was wrong in not following FALCO, but the question is now before us. And you are asking us to say that venue in a patent infringement case is only where the entity is incorporated or comparable to that. And you have acknowledged that there is no other venue provision for any other kind of claim that is so limited to just the place of incorporation. Well, I would respectfully disagree, because what 1400b does is it provides a different way to define venue for nonresident defendants. 1400b isn't restricted just to the district where the defendant is domiciled. 1400b provides not the expansive regime the 1391c does, you know, any place where, you know, someone could constitutionally summon you into court. 1400b says you have to have a regular and established place of business and commit an act of infringement. Now, that's a choice that Congress made. That is a different venue prescription than what 1391c provides. And there's very good reasons. I could sit here and as someone who tries patent cases, I could tell you there's a reason why patent litigation has characteristics that make it much more susceptible to the kind of forum shopping that some of the amici have done, because the injuries that issue in patent litigations don't grow out of some tangible, you know, a train wreck or some tangible loss where it tends to bring the litigation to the place of the injury. The injury claimed in patent litigation usually is a synthetic non-receipt of a reasonable royalty that allegedly is due, and that can be marketed and sold and transmitted into a forum. There's all kinds of reasons why 1400b is an important law to enforce and uphold. If there are no further questions, I would like to reserve the rest of my time. Roberts. Thank you, counsel. Breyer. Well, I do, actually. Okay. Not so fast. As long as you have a minute, maybe you could indulge me and trace me through this. With a corporation, I think 1400 says resides, where the defendant resides. Correct. But then that incorporated section 48. And section 48 said where the defendant is an inhabitant. Correct. And now, inhabitant, how do we know that means where the corporation is incorporated or something? What does that mean in the case of a corporation? How do we know that that's word, inhabitant, means what you think it means? What do you think it means? Because Forco said that. Forco said that. Well, Forco is going really into whether 1391c or 13, whether they made an exception, whether they included that, and it says no. It's a very short opinion. 1400b, the relevant part of Forco is on page 226, where the Court says, by an 8-to-1 vote, characterizing the change from section 48, in the middle of the page, quoting the reviser's notes, words in subsection b, where the defendant resides, were substituted for, of which the defendant is an inhabitant, because the words inhabitant and resident, as respects venue, are synonymous. And then there's this parenthetical. We pause here to observe that this treatment and the express reason for it seems to negative any intention to make corporations suable in patent infringement cases where they are merely doing business, because it says in respect of corporations it means the state of incorporation only. Correct. But you're not an incorporation. So I'm back to my first question. The treatment of domiciles of chartered entities has, under this Court's precedence and under universal practice. And so I should look at what case? We cite the Troutwine case as an Indiana case in our brief as an example of that. And thirdly the case in our brief as an example of that. But I thought you said it depended on what the State can define residents in a different way. Well, States will tell us. With respect to LLCs. When a State creates a legal person, a juristic, jural entity, the State will prescribe where its legal domicile is. And that is a matter of public record. So it's an easy thing to find out. Thank you, counsel. Mr. Jay. Mr. Chief Justice, and may it please the Court, if I may, I'd like to offer a different theme for today, and that would be definitions rather than the 30-year point that Justice Kagan posited. Congress has written a definition of residence that applies for all venue purposes. Well, but I mean, yes, there's a difference between for venue purposes and for all venue purposes and for venue under this chapter. But this is something fairly significant in the area of patent law. And I would have thought that if Congress were trying to make a significant change, there would be a lot more evidence of it other than just changing the particular nuances of the words. Well, of course, Mr. Chief Justice, it isn't here a change from for venue purposes just to for all venue purposes. There are, I think, four changes in between the forco text and the text today, and in between you had the statute construed in V.E. Holdings which said for purposes of venue under this chapter. But there's no real evidence of any, including in the nuances you talk about, of such a significant change. I mean, we can't get rid of this issue. I mean, we tried in Stonite and then in forco. It just sort of keeps coming up. And I would have thought when you have – well, I mean, is our forco decision law? The principles by which forco interpreted the statutes are still good law. But the definition that forco applied is no longer the controlling definition of residence. Okay. Well, the current statute says except as otherwise provided by law. And I would have thought that excluded overturning the forco decision. So I don't think so, Your Honor. And I think that the function that except as otherwise provided by law, I'd like to illustrate what work that's doing in the statute, and then I'd like to explain why nothing, in fact, otherwise provides by law in 1400b. So if you look at the appendix to the red brief, pages 3a to 4a, and then again 5a to 6a, these are the old statutes. So this is the 88 version, then actually the 52 version, you know, from the 48 recodification. Except as otherwise provided by law has been in the statute since the 48 recodification. Where was it? It was in the general venue provision and it was in the diversity venue provision, A and B of 1391. So that's right in the carryover on 1391. Kennedy, and then later it's going to be moved to the beginning. That's right. So now that there aren't separate statutes anymore for general venue, diversity venue, and local action venue, which was 1392, all of that's now in 1391b, and this except as otherwise provided by law language, which has always been there, has now been put in 1391a. And if you look at why the American Law Institute drafted it just that way, because it's just the way that the ALI drafted it that Congress adopted, you will see that I, both from the ALI report and also from page 18 of the House report, that the purposes of this except as otherwise provided by law language is to, quote, follow current law. It wasn't intending to overrule V.E. Holding at all. Now, my friend on the other side. Roberts, I mean, it wasn't intended to overrule V.E. Holding, but I suspect it wasn't intended to overrule Forco at all either. And Forco is a decision of this Court. It certainly is, Your Honor, but I do think that Forco is based on two things. And those things are no longer the case in the statute. Let me walk through that. So Forco is based on two things. Number one, the fact that 1400 was recodified in the 1948 revision of the Judicial Code, and if there isn't a change specified in the reviser's notes, the Court said it will not read that change in, even though ordinarily when Congress makes a change in language, this Court's presumption is the opposite. The Court's presumption is that Congress means to do something by its change, not in the recodification context. Now we don't have the recodification context anymore. The other thing is the specific and the general canon. This Court said that 1391c, as it then existed, was clearly a general corporation venue statute, and so it was. It provided where a corporation could be sued. It doesn't do that anymore. 1391c is now a purely definitional provision, and it was adopted specifically to clear up a number of the nagging problems that the members of the Court have been asking my friend about, including where do you sue an artificial entity that is not a corporation, where does it reside. Justice Breyer, the answer to your question is, in this Court's decision, in Denver and Rio Grande from 1967. Now, my friend says, well, that's a general venue case, but I think the salient point is that the Court said in that case there is no – there was no settled construction of the law on where an unincorporated association resides in 1948, and there is none yet. Roberts. Did you raise the significance of the fact that it was an unincorporated association in your brief in opposition? No, Your Honor, because we don't think that it matters because the definition now applies to all business entities, corporations and LLCs. The definition is 1391c. Well, it seems odd to me you didn't raise it in your brief in opposition, and yet it takes up several pages in your brief on the merits. Because it's relevant to our statutory interpretation that our interpretation, but not the other side's, would clear up this issue and save the Court from having to confront in another case, where does an LLC reside, and get another case. Breyer, I mean, look, look, if you're right, you win. That's the end of the case. If you're wrong, then you have another point, and that is that Forco doesn't apply really to unincorporated associations. So why isn't the right thing to do for us to decide the issue? If you win, that's the end of it, and if you lose, you send it back, and we say to the lower court, if you haven't forfeited the point, maybe you could raise it and argue it. Is that the correct way to handle this? I think that that's fine, Your Honor. I do think that's fine. That's the correct way to handle it. Yes, but because we think, of course, that we win, and one reason that we win is that the the. Obviously, you think you win, and look, I'm not worried about it if you win. What I'm worried about what to do is if you lose. So I agree with what Your Honor just said, but the question about what to do with LLCs and what to do with defendants who don't reside in the United States, this goes to Justice Sotomayor's question, is a big part of why Congress, why the ALI, working with the Judicial Conferences Committee on Federal State Jurisdiction, proposed a statute that would resolve these ambiguities in the naked word resides or resident, wherever they apply. Kagan. And you rely upon it in your briefs a lot, and you rely on it here. I mean, the ALI wanted to get rid of 1400, and Congress didn't do that. That's right. But its proposal to clear up the ambiguities in the word resident or resides, for all venue purposes, the ALI explained in its report at page 188 and 189, and then Congress then in the House report at page 20 echoed it almost exactly. The reason to the work that is, the work that the words for all venue purposes do is to provide that these definitions shall apply not just to the general venue statute, but to all venue statutes, general or special. And the House report says the same thing on page 20, even though, of course, as you said, the House didn't repeal 1400. And we're not saying that 1400. Breyer. General or special, true, there are lots of different ones. But did it say, if you pass this, don't worry about getting rid of 1400, because this gets rid of it? I mean, did they say anything like that at all? No, because 1400 still serves a function. No, I mean getting rid of forco. Oh, well, that's a different question. Did it say anything? I mean, when I used to, maybe this was years ago, this said don't worry about repealing 1400. If you pass this, you will be rid of the Supreme Court's interpretation in forco, or anything like that. What it said, Your Honor, is that the Federal Circuit's decision in V.E. Holding was, it called it a partial palliative. It said that the work needed to be finished, because V.E. Holding addressed corporations based on the statute as it then, corporate defendants based on the statute as it then was, but that the work needed to be carried forward in the definition for, number one, corporate plaintiffs, where do they reside? And number two, unincorporated defendants, where do they reside? And that's what this cross-cutting, all-purpose definition was intended to do. But for the – I think it's important to note that under our view, 1400b does do work. It is the venue statute, so you have to show either that the defendant resides – all defendants reside there, or all defendants are subject to suit there under the second half. That's different from what the general venue statute provides, which, for example, can base venue on the residence of only one defendant. There is significance. There's work left to be done for 1400b. But it doesn't define. Ginsburg. But I thought that the only thing that left was to govern a suit against an individual. Well, a suit against an individual would still – would be more likely to trigger the second half of the statute, but in deciding what is the proper venue, the first thing you do is you look at which is the right venue statute. In this case, it's not the general venue statute, 1391b. It is the special venue statute for patent cases, 1400b. Now, that doesn't define resides. Resides is defined for all venue purposes somewhere else. It's in 1391c. And so for all venue purposes, that's the definition you apply. Now, when the defendant is – Sotomayor gets subsumed by 1400b, the second part of it, gets subsumed by 1391. There's no – you keep saying there's work for this, but where? So the second half, I agree, does not have much work left to do except in cases where the defendant is an individual. So I think that that by itself means that the second half is not surplusage. But let me answer that differently. Sotomayor, you would have specific jurisdiction if the person committed an act of infringement and has regular and established place of business. Presumably, they are doing business in that State by doing the act of infringement. But the – for an individual defendant, Justice Sotomayor, the definition isn't based on personal jurisdiction. It's based on their domicile. Tell me in what patent case we've ever had an individual sued that wasn't an agent of a company. I can't cite one right now. I can't. I couldn't find one. Right. But I can tell you, for example, that, you know, my friend Mr. Dabney says that the problems we've raised are hypothetical problems. This Court has six patent cases this term. Four of them have LLC defendants in them. And we think that understanding where an LLC resides is actually a very important point. LLCs were basically a business entity that came into existence in about 1979 and really have only taken off in the last 20 years. Applying the 1897 definition of inhabitant carried forward into 1400b without this definition doesn't give you that answer. And we know that because Denver J. Abrams said so. Roberts. Roberts. I thought you responded to Justice Breyer by saying that is an issue that could be dealt with on remand. No, Your Honor. The difficulty of determining where an LLC is located. No, Your Honor. What I said both to Your Honor and to Justice Breyer is that it informs our statutory answer. In other words, this difficulty is a reason why you should adopt our reading of the other sides. As for if you adopt the other side's reading. Again, it's a difficulty you didn't point out to us at the jurisdictional stage. I think there are the reasons to adopt our statutory interpretation are many, the text, the legislative history, and the structural considerations, and I think that they are all fair game here on the merits. We're not urging you to dismiss the cases improvidently granted, but I think that the practical difficulties with the other side's statutory interpretation, we're not required to raise all of those in the brief in opposition in order for you to consider why you should adopt our reading on the merits. Kagan. Kagan. And this is a clarification question, and maybe I should know this, but you have the original 1391, which was the subject of Forko. Then you have the 1988 amendment. Then you have the 2011 amendment? Correct. Is it the 2011 amendment that you think changed things, or is it also the 1988 amendment? And if it's the 2011 amendment, exactly which words do you think changed the thing? So it's both, Your Honor. I don't think you need to agree with me about the 88 amendment, but we do think that for corporate defendants, it changed in 1988. It did not change for non-corporate defendants in 1988, because those weren't the words that Congress used. In 2011, we think that there are four things, and I think these are the four differences that I wanted to talk about with respect to Forko. We think that for all venue purposes does the work, because that's what the ALI and the House report told you, in addition to their plain and unambiguous meaning. We think that the definition of venue But why is for all purposes different from for venue purposes or for purposes of venue under this chapter? Why isn't it all the same? Well, for all venue purposes is broader consciously than for purposes of venue under this chapter, because there are more than 200 venue statutes that are outside Chapter 87, and Congress and the ALI wanted to pick up the Yes, but 1400 was within the chapter. That's right. So the effect was exactly the same. It wasn't because now it's no longer just corporate defendants. The 2011 amendment adds to the definitions. It provides for a domicile for individual defendants. It expands the C-2 definition to cover other business entities besides corporations, which wasn't done in the 88 amendment. And it provides a rule that slightly tweaks what this Court said in Brunette. It provides what the rule should be for defendants who do not reside in the United States. Now, my friends on the other side say, essentially, aliens can be sued in any district. And that's what the prior statute said. But that's not what Congress wanted the law to be anymore. Congress wanted the law to be that a defendant that does not reside in the United States may be sued in any district. How do you decide if a defendant resides in the United States? You apply C-1 and C-2. All those definitions tie together. And I think that if Congress had wanted to dispense with Brunette for patent cases and create, you know, an entirely different rule just for patent cases, I think there it would have said so. But instead it wanted to adopt a cross-cutting definition. Third point, the definition of venue in 1390. If there's any doubt about what a venue purpose is, you can look at the definition of the word venue. And some statutes that might be considered venue statutes are excluded from that definition. They are the ones that regulate the subject matter jurisdiction of a court and say that this court and only this court, you know, let's say the district court for D.C., shall have jurisdiction to decide something. That's carved out of venue, but the patent venue statute certainly is not carved out of venue. Breyer, You asked me this question, answer this question. I'm not an expert in this area, comparatively speaking, so you need to, I need enlightenment here. Think of A-1. This section shall govern the venue of all civil actions brought in district courts. Okay. So what's an example of one that it doesn't govern, where the law provides otherwise? Wessler, A special venue statute that provides that instead of the general, so if you turn the page to 2A, here's the general venue statute, venue in general. So a special venue statute that provides that the basis for venue should be, for example, the plaintiff's residence instead of the defendant's residence, that's an example of a special venue statute that provides otherwise by law. Breyer, So in other words, B doesn't apply because of the words in A, except as otherwise provided by law. Wessler, That's exactly why Congress put those words into general venue statutes in 1948 and why they're still there today. Breyer, So why, if it governs B, does it not govern C? The words except as otherwise provided by law, you've just said, and I think you're absolutely right as far as I understand it, that those words govern B. They govern A and they govern B. Then why don't they govern C? Wessler, Their function is to prevent B from swapping a special venue statute. Breyer, That might be, but also, I know. But if B is in a separate section, and now C is the next section, so why doesn't it govern that? Wessler, So two reasons. Number one, I think the reason that it uses the word section is that previously there were two general venue sections. Some were in 1391 and there were more for local actions in 1392. One of the things that Congress did in 2011 was get rid of 1392, so that's why I think it wrote in, this section shall govern the venue. Now, what does it mean to govern venue? What it means to govern venue is to provide on which bases venues shall lie, plaintiff's residence, defendant's residence, personal principal place of business. There are venue statutes that do each of those things. 1400B is a special venue statute, and it says defendant's residence or the conjunctive definition in the second half. So this is what prevents this is what says look to 1400B and not to the general venue statute in a patent infringement case. Of course, in a, in another patent case where it's the alleged infringer bringing a declaratory judgment action saying that I want a declaration that I don't infringe, that does go under the general venue provision. And there are lots of declaratory judgment actions brought right now by prospective defendants that get to use the general venue provision. They get to sue patent owners anywhere the patent owner is subject to personal jurisdiction. And one virtue of our rule is that it creates greater harmony between the sort of declaratory judgment actions, which are kind of where the defendant races into the courthouse to sue first, and an infringement action brought by the patent owner under 1400B. So I hope that I've answered your question about why this doesn't govern, why this doesn't do the work. But another part of that answer, which I promised to get back to the Chief Justice on, is about why nothing provides otherwise by law in this case, even if you don't agree with anything that I've said to this point. And that is because Forco interpreted the word residence in 1400B, and that's absolutely true. It gave it the same meaning that it had in all the venue statutes in 1897, diversity venue, general venue, patent venue. It just meant inhabitant. And inhabitant, it did have a meaning for corporations. It did have a meaning for individuals. It didn't have a settled meaning for unincorporated associations, but we can come back to that. The point is that Congress has now adopted, and one thing that my friend said that I entirely agree with, it's an artificial definition. It is an artificial definition of residence, but it did so because it wanted to eliminate nice distinctions about where particular kinds of business entities reside, using the term as it was used in 1897, and it wanted to simplify the inquiry. You're going to have to answer the personal jurisdiction question in all of these cases anyway. So for corporate defendants, giving an additional venue inquiry about whether they – where they are doing business or where they have a regular and established place of business are additional complications layered on top of that personal jurisdiction inquiry that you're going to have to do anyway. That's why Congress in 1988 for general venue decided to make personal jurisdiction the touchstone for venue as well for corporate defendants, and why the ALI working with the Judicial Conferences Committee and then Congress decided to expand that to unincorporated associations for all venue purposes in 2011. It's simpler, it's cross-cutting, it's not sort of a patent-specific rule, but it is the best rule, and it's the rule that Congress adopted. And if the law does not allow it, it's not the best rule, and it's the rule that Congress adopted. Sotomayor, there's a lot of amici discussions as to their reasons for why so many suits are censored in this Court in Texas. What's your reason? Why do you think that's true? So I think that the – if I understand your question, it's why do people – why are people suing in this Court in Texas, or why are so many people suing in this Court in Texas? Is it 1391, or is it something else? Well, it's only 1391 in the sense that it's a permissible choice, but I don't think that that is an answer to the question why they choose that over all other permissible choices. And I think if there are complaints about the way things are handled in East Texas – and my client, Kraft, has been a defendant in East Texas in patent infringement cases as well – if there are complaints, they tend to be complaints that aren't venue-style complaints. In other words, it's an inconvenient forum compared to where I am located. They tend to be complaints about how the cases are managed, how discovery takes place, how motions practice is handled, and so on. And those complaints, if they're valid, would be valid even when venue is indisputably proper over a Texas defendant. There are problems that should be dealt with on their own terms rather than by letting anybody not from Texas out of that district and leaving everyone else still in the district with the practices unchanged. Roberts. I didn't understand that answer. You're saying the problems would be there for Texas corporations that actually reside in that district anyway, so we shouldn't worry that 25 percent of the nationwide cases are there? I'm saying two things, Your Honor. Number one, I think the complaints about East Texas aren't really about overcrowding, and I'd like to answer that as my second point, but that rather they are about the way that the cases are handled, you know, whether there would be, you know, one case or a thousand cases. Let me talk about the overcrowding. Kagan. But the complaint is that it allows a kind of forum shopping, right? That it – let's go down to Texas where we can get the benefit of a certain set of rules. I mean, I think that the same criticism can be made of the rule that Congress adopted for the general venue statute in 1988 or, for that matter, the fairly liberal rule that Congress adopted for corporations in 1948, and patent cases, number one, don't have varying circuit law. They have a single Federal court, appeals court. And number two, they don't have choice of law problems, you know, so that you can certainly have forum shopping problems under the general venue provision quite easily as well. So, no, I don't think it's the first case. Kennedy, do general – generous jury verdicts enter into this, or is that something we shouldn't think about? So I think that the empirics, you know, there's a battle in the amicus briefs about that. I mean, I think that at least one scholar has said that the outcomes are not significantly different in cases that go to trial. We don't have a position on that. We haven't crunched the numbers ourselves. But ultimately, we think that – But certainly that might be a perception by the bar who bring – by those in the bar who bring these suits. It might well be. And certainly that is the argument that's being made to Congress, and I think that when Congress, you know, takes up this issue, as it has already been asked to do and it's already been considering at the committee level, Congress can do something that this Court doesn't have the ability to do in this case, and that is to modulate venue in a way that's not binary. In this case, you only have the two choices. My friends on the other side say reside for a corporate defendant just means the state of incorporation. That's it. What Congress can do is create a definition that doesn't turn on the word resides at all, or that adds more choices. It could add principal place of business. It can add where the plaintiff has done research on the invention that is patented. Those are, in fact, what the proposals look like. None of the legislative proposals about patent venue in the last ten years that I have  Nobody likes the one-place-of-residence rule. They all at least offer principal place of business and some plaintiff-centered venue, and that is why the empirics say that if you adopt the rule that my friends on the other side are proposing, you will shift more than half of all cases from the district where they now are into other districts, whereas if Congress adopted its current the current version of its reform, nonpracticing entity cases would largely move, but operating company cases largely would not, whereas if you adopted Heartland's rule, operating company cases would wind up shifting. And let's get back to my point, Mr. Chief Justice. They would have to shift to places like Delaware where lots of defendants are incorporated. And if everybody were incorporated in Delaware, maybe that would be okay, but because lots are incorporated in Delaware and some are not, you have kind of a dual problem. You are going to have overcrowding in Delaware and the cases that really ought to be in the same place, you won't be able to bring in the same place. Roberts Were any of these policy considerations addressed by Congress when it made the change you suggest it made in 2011? The policy considerations about patent, about where patent venue ought to be? Yeah. No, because Congress decided that it was going to, for the purposes of residence, it was going to adopt a single definition across the board, but, but. I laugh at it slightly because if that's so clear, what's this case doing here? And, and if, that's what I, that's why I can't cut one way or the other with that particular argument. I mean, you'd think the patent holders are a tremendously powerful group of people, businesses all over the country. And if they had been, why weren't they in Congress? See, that, that's a congressional problem. Why weren't they there saying we have a problem here? Why don't you clarify it? I don't think you can answer that question. I can't. You can't? Well, yeah, sure, right, because I think, because I think that the issue is not the definition of residence. The issue is how do we come up with a different patent venue statute altogether? And that is something that Congress has been working on, trying to come up with something more calibrated, so that, for example, a research university would be able to bring suit in its home district, because that's where it did the invention, it's where the inventor's lab is, and so forth. You know, where they would want to be able to sue a defendant in its own principal place of business, even if it doesn't commit the relevant act of infringement there. And in particular, because, you know, the second half of the patent venue statute was interpreted in a way that requires everything to be conjunctive, in other words, all defendants have to have committed acts of infringement and have regular and established places of business there. You have parent subsidiary problems. You have problems when you sue on multiple patents. Patents which are infringed at different times, like the process of making something and then the good that is made, each of those could be different acts of infringement. And you also have problems in pharmaceutical cases. I think one aspect of patent litigation that is working pretty well is these pharmaceutical cases where a brand company sues all the generic companies that want to make a product that's a, you know, a facsimile of the brand product. Congress in section 299 of the Patent Act recognized that those are an example of cases that really all ought to proceed in the same district. They are an exception from the no consolidation rule that Congress wrote in the America Invents Act. So what's going to happen to those cases? Number one, there is no active infringement yet because the active infringement that kicks off the lawsuit is an artificial one. And number two, you won't be able to sue all those generics in the same district at all. Right now, a dozen or even two dozen cases can all be brought in the same district. It has to be litigated to judgment in 30 months, which is the time period that Congress put in the statute. And yet, if you are going to have to be bringing a dozen suits in a dozen districts, that's going to be significantly more difficult. I mean, ultimately, we don't think that these practical problems are dispositive because we think the text and the legislative history and the reasons why the ALI wanted to solve the problems that had come up with the previous versions of the undefined term residence are so clear. Congress wanted a single definition that would have cut across all these statutes. That might have been the reason why Congress rejected the ALI proposal to just get rid of 1400b. I can't cite you a page of legislative history, for example, but I think it may well have wanted to continue having a rule that, for example, requires all defendants to reside in the district of venue, which is what 1400b now provides. Whereas the general venue provision has transactional venue, it allows for venue where nobody resides, and it also allows for venue sometimes where only one defendant resides. But we think that Congress could have gone through and snipped out all of the venue provisions or portions of venue provisions that were left somewhat superfluous by its adoption of this broad definition of resides. The ALI recognized that that would be a mammoth task, but nevertheless, Congress decided to do it anyway, and to do it this relatively easy way. And I think, you know, the feel of venue provision — Kennedy, it seems to me your answer is quite proper as to 1400a, but how does your answer apply to 1400b? How does it apply in terms of work left to be done by the rest of the statute? Yes. Your explanation was that they wanted to get rid of all of these distinctions, but that doesn't — and that makes sense so far as a is concerned. But I don't understand how it applies to b. Well, it wanted to get rid of the idea of different conceptions of residence under different statutes and different conceptions of residence that apply to different types of defendants. It wanted to have all of that standardized. Now, that might sometimes result in the word resides in a venue statute swallowing the rest to some degree. I think, you know, this Court next month is going to consider the FILA venue provision, 45 U.S.C. 46, I believe, and that venue provision, it's in the list, in I think footnote 8 of the House report, that footnote incorporates, of venue provisions that would be encompassed, and it says resides or shall be doing business. Now, plainly, that's subsumed by the redefinition of resides, but that's a result that Congress was comfortable with. Thank you, Mr. Chief Justice. Roberts. Thank you, counsel. Five minutes, Mr. Dabney. Thank you, Mr. Chief Justice. Getting to the point that Justice Breyer made, the domicile of unincorporated associations, limited liability companies, has not been a problem in the law for decades. It has been settled. There's a reason they didn't bring it up in their brief in opposition. It was never an issue in the case. And the place in the joint appendix I would direct the Court's attention to is page 20A, which is the proof of service that they served in this case, in which the Defendant's Counsel in Delaware filed proofs of service stating that the nonresident defendants were served with the notice required by and identifying the principal place of business of the defendant. The idea that you don't know where the domicile is of a chartered entity is something for which there is absolutely no evidence in the record. It is a complete nonproblem. Sotomayor, what do we do with your adversary's last point about the all of the cases, like the pharmaceutical cases, that will be upended and made completely impractical by ignoring 1391? I don't believe that the – I believe that that provision, that argument is overstated for various reasons. First of all, to the extent that venue applies across the board, and of course it will apply to putative makers of generic drugs as well, the Judicial Panel on Multidistrict Litigation exists to provide for pretrial consolidation of proceedings, if that is appropriate. Many generic companies have waived any objection to venue by – potentially by registering to do business in the places where the brand companies want to sue. That was the holding in the Accorda case, in which this Court denied cert on January 9. So it is completely speculative to suggest that simply upholding what Congress has seen fit to provide by way of across-the-board venue protection for patent litigation is necessarily going to prevent litigation over putative generic drug manufacturers. Secondly, the Forco case was one whose critical holding was not based on the then-content of 1391C, which, as Justice Kagan correctly pointed out, whose breadth was no narrower then than it is now. For venue purposes, for all venue purposes, it's exact. There's no difference there. What Forco was so important is that it held that 1400B is freestanding. It is not supplemented by 1391C. So if we're looking at what 1400B means, you have a word that has been construed by this Court. That construction has never been overruled or changed by Congress. And in the Pure Oil v. Suarez case in 1966, Justice Harlan wrote for a unanimous court that 1391C applied to all venue statutes except where there was a restriction and cited Forco and the patent venue statute as a specific exception. Why? Because the structure of 1400B that specifically distinguishes between resident and non-resident dissent defendants makes no sense unless the statute is given its original meaning. You can sue a defendant in the judicial district where his domicile is, or if you want to sue somewhere else, you have to sue somewhere where there's both an act of infringement and regular established place of business. That's what Congress provided, and it's very revealing that my opponent cites as one argument for overruling Forco is that adoption of the Respondent's Rule would make more even-handed patent infringement cases and actions for declaratory judgment. Well, that's simply a frontal assault on 1400B itself, because when it talks about a civil action remedy provided by 35 U.S.C. section 281. So those are the only kind of actions that 1400B applies to. So if there's a problem with the way Congress wrote the law, that's just too bad. That's not for a court to come in and overrule precedent in order to achieve a goal like that. And I also heard conceded here that whatever might be the motivations for filing a patent suit in a particular jurisdiction, it is conceded here that it is the interpretation of 1391 and the disregard of this Court's Forco decision that has made all this possible. And in one of the papers that was cited in the Respondent's own brief, the paper by the paper by Professors Chin and Risch, that paper cited on page 131, that the case 52 indicates that 68 percent of small and medium-sized businesses will get venue relief if T.C. Heartland wins this case. Thank you. Thank you, counsel. The case is submitted.